# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

RICHARD A. CHATMAN,

:

    Petitioner,                             Case No. 2:10-cv-1091

:                            District Judge George C. Smith
    -vs-                                    Magistrate Judge Michael R. Merz

Warden, Ross Correctional Institution,

:

    Respondent.

## REPORT AND RECOMMENDATIONS

Petitioner brought this habeas corpus action *pro se* pursuant to 28 U.S.C. § 2254 to obtain relief from his convictions in the Franklin County Common Pleas Court for murder, tampering with evidence, and possession of weapons under disability (Petition, Doc. No. 1, PageID 1). Based on those convictions, he is serving a sentence of twenty-eight years to life in Respondent's custody.

Petitioner pleads the following Ground for Relief:

> **Ground One:** Petitioner was deprived of his Sixth Amendment rights to the effective assistance of trial counsel.
>
> **Supporting Facts:** Counsel's failure to object to the introduction of numerous gory, irrelevant and prejudicial photos whose probative value was substantially outweighed by their prejudicial effect and failure to request an in camera hearing regarding the testimony of the co-defendant.
>
> **Ground Two:** Petitioner was denied due process when the evidence is insufficient to convict him.

1

>**Supporting Facts**:  The state of Ohio failed to present sufficient evidence of complicity to murder and having a weapon while under disability.
>
>**Ground Three**:  Petitioner was denied his right to confrontation and compulsory process.
>
>**Supporting Facts:**  The trial court failed to provide petitioner a meaningful opportunity to present a complete defense so that his co-defendant could present testimony establishing petitioner's innocence.

(Petition, Doc. No. 1, PageID 5-9.)

## Procedural History

Chatman was indicted by the Franklin County Grand Jury on counts of aggravated murder and murder, two counts of tampering with evidence, and one count of having weapons while under disability.  After waiving his right to trial by jury, he was convicted on all counts except for aggravated murder, as well as a firearm specification and a drive-by specification.  Chatman appealed to the Tenth District Court of Appeals which affirmed.  *State v. Chatman*, 2009 Ohio 2504, 2009 Ohio App. LEXIS 2101 (Ohio App. 10th Dist. May 28, 2009).  The Ohio Supreme Court declined to exercise jurisdiction over a further appeal.  *State v. Chatman,* 123 Ohio St. 3d 1409 (2009).  Chatman then filed the instant Petition on December 6, 2010 (Doc. No. 1).  On Judge Deavers' Order (Doc. No. 2), Respondent filed a Return of Writ on March 17, 2011 (Doc. No. 5).  Despite the expiration of over two years since then, Petitioner has not filed a reply to the Return.  The case is therefore ripe for decision.

Analysis

### Ground One:  Ineffective Assistance of Trial Counsel

In his First Ground for Relief, Chatman claims he received ineffective assistance of trial counsel when his trial attorney (1) failed to object to the admission of gruesome photographs and (2) failed to request an in camera hearing regarding the testimony of his co-defendant.  This claim was raised as the first assignment of error on direct appeal.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

The court of appeals decided the ineffective assistance of trial counsel claim as follows:

> **[\*P10]** In his first assignment of error, appellant contends he was denied effective assistance of counsel. Specifically, appellant argues his counsel failed to object to the numerous gory and prejudicial photographs and failed to request an in camera hearing regarding the testimony of his co-defendant, Vinson.
>
> **[\*P11]** To prove ineffective assistance of counsel, defendant must first prove that counsel's performance was deficient. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2065, 80 L. Ed. 2d 674. To meet the requirement, defendant must initially show counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be

3

considered sound trial strategy.'" Id. at 689. (Citation omitted.) "Even debatable trial tactics do not constitute ineffective assistance of trial counsel." State v. Jordan, 10th Dist. No. 04AP-827, 2005 Ohio 3790, P17, quoting State v. Nichols (1996), 116 Ohio App.3d 759, 764, 689 N.E.2d 98.

[*P12] Defendant must next demonstrate that counsel's deficient performance prejudiced the defense by showing that, were it not for the errors, the result of the trial probably would have been different. The failure to prove either prong of the Strickland test makes it unnecessary for a court to consider the other prong.

[*P13] During the trial, the parties stipulated to the admission of the photographs, which included depictions of the crime scene as well as the autopsy. In addition, the parties stipulated that appellant was the driver of the Bronco and that Vinson was the shooter. Appellant's theory during the trial was that despite his being the driver, he in no way was an aider and abettor under the state's complicity theory. Nonetheless, appellant contends his trial counsel was ineffective in stipulating to the "gory, irrelevant and prejudicial photographs." (Appellant's brief at 4.) Specifically, appellant states that photographs were used to "hammer the point that Walton was a bloody mess, this was a gruesome shooting, and [appellant] should be found guilty." (Brief at 5.) Appellant also asserts the sole purpose of introducing the pictures was "to inflame the passions of the trier of fact." (Brief at 6.) Therefore, appellant asserts his counsel was ineffective in failing to object to the photographs' admission under Evid.R. 403, and/or in failing to limit the number of photographs admitted because there was no basis to admit the majority of the photographs.

[*P14] Initially, we note that the admission of photographic evidence is left to the sound discretion of the trial court, and a trial court may indeed reject a photograph, otherwise admissible, due to its inflammatory nature if on balance the prejudice outweighs the relevant probative value. State v. Maurer (1984), 15 Ohio St. 3d 239, 264-65, 15 Ohio B. 379, 473 N.E.2d 768. While concededly many of the photographs in this case are gruesome, "the mere fact that a photograph is gruesome or horrendous is not sufficient to render it per se inadmissible." Id. at 265, citing State v. Woodards (1966), 6 Ohio St.2d 14, 25, 215 N.E.2d 568.

[*P15] Further, as the Supreme Court of Ohio stated in Maurer, "[t]he fact that appellant stipulated the cause of death does not automatically render the photographs inadmissible." Id. at 265. Additionally, "relevant evidence, challenged as being outweighed

4

by its prejudicial effects, should be viewed in a light most favorable to the proponent of the evidence, maximizing its probative value and minimizing any prejudicial effect to one opposing admission." Id., citing *United States v. Brady* (C.A.6, 1979), 595 F.2d 359.

**[*P16]** Here, because there was not a jury as this matter was tried to the bench, the decision to stipulate to the photographs' admissibility could constitute sound trial strategy. Debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. *Jordan,* supra. Defense counsel's decision to stipulate to evidence is generally considered a tactical decision. *State v. Townsend*, 9th Dist. No. 23397, 2007 Ohio 4421, P27, citing *State v. White* (Nov. 15, 1995), 9th Dist. No. 16900, 1995 Ohio App. LEXIS 5073. See also *State v. Pridgen*, 5th Dist. No. 2004 CA 00313, 2005 Ohio 3291, reversed on other grounds, 107 Ohio St. 3d 1421, 2005 Ohio 6124, 837 N.E.2d 1207 (strategic decision to stipulate to evidence did not constitute ineffective assistance of counsel). Had defense counsel objected to the admission of the photographs, the trial court would have then been required to review and scrutinize each and every photograph to determine its admissibility. Hence, we can discern a tactical decision from counsel's actions as the court, as trier of fact, would have reviewed the photographs nonetheless. For this same reason, appellant is unable to establish prejudice by his counsel's actions as the trial court would have reviewed these photographs regardless of whether or not defense counsel objected to their admission. We cannot say there is a probability sufficient to undermine the confidence in the outcome of this case; therefore, we are not able to find appellant was prejudiced by his counsel's actions. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

**[*P17]** Furthermore, "[w]e indulge in the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." *State v. White* (1968), 15 Ohio St.2d 146, 151, 239 N.E.2d 65; *State v. Nasser*, 10th Dist. No. 02AP-1112, 2003 Ohio 5947, P57, appeal not allowed by 101 Ohio St. 3d 1490, 2004 Ohio 1293, 805 N.E.2d 540. To demonstrate the trial court's decision was based on improper evidence, appellant directs us to the trial court's comments made at Vinson's plea and sentencing hearings that the photographs were "too gruesome to display" and that "this is by far the worst I've seen, the absolute worst." (Appellant's brief at 9.) With respect to his own proceedings, appellant goes on to contend only that the trial court "continued at [appellant's] sentencing

5

indicating that he listened and seen firsthand the gruesome details of the offense." (Brief at 9.)

**[*P18]** First, the quoted portions of the trial court's comments are from Vinson's proceedings, not appellant's. Secondly, appellant's reference to the trial court's comments in his own case were, as appellant directs, made at appellant's sentencing, after appellant had been found guilty. Accordingly, we find nothing in the record to affirmatively demonstrate the trial court considered anything but relevant, material, and competent evidence in arriving at its judgment. While the photographs depicting the facts of this case are unpleasant, it is because they depict a close-range blow to the head from a shotgun. However, the record is devoid of any evidence that the trial judge, as trier of fact, was inflamed by the gruesome nature of the crime so as to undermine one's confidence in the verdict, that as will be discussed infra, is supported by the remaining evidence. *State v. Keene*, 81 Ohio St.3d 646, 1998 Ohio 342, 693 N.E.2d 246.

**[*P19]** Also under this assigned error, appellant contends that if this court should find the issue raised in his third assignment of error was not preserved for review, his trial counsel was ineffective on this basis as well. For the reasons following in our disposition of appellant's third assignment of error, we find no merit to this portion of appellant's argument.

**[*P20]** Accordingly, we overrule appellant's first assignment of error.

*State v. Chatman,* 2009 Ohio 2504, ¶¶ 10-20.

In this case the court of appeals applied the proper federal constitutional standard as enunciated in *Strickland v. Washington, supra*. As the court of appeals noted, since this was a trial to the bench, the trial judge would, in any event, have seen all of the photographs one by one if Petitioner's counsel had objected. By stipulating to their admission, counsel at least had a chance that the trial judge would accept them as a group and not pay much attention to them. Furthermore, as the court of appeals held, when judges are triers of the fact, they are presumed to ignore irrelevant evidence they have seen. It was therefore not deficient performance to stipulate to their admission.

6

As to the claim that counsel should have requested an in camera hearing regarding testimony of the co-defendant, the court of appeals found that the freestanding third assignment of error regarding calling co-defendant Vinson as a witness had no merit.  It therefore held that there was no ineffective assistance of trial counsel in failing to ask for an in camera hearing regarding Vinson.  This holding precludes any claim that it was ineffective assistance not to ask for the hearing:  it cannot be deficient performance to fail to ask for a hearing where the result would not have had an impact on the case.

Because the court of appeals' decision is entitled to complete deference under 28 U.S.C. § 2254(d)(1), Petitioner's First Ground for Relief is without merit and should be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability on this Ground for Relief.

### Ground Two:  Insufficient Evidence

In his Second Ground for Relief, Petitioner asserts he was convicted on insufficient evidence, challenging the sufficiency of evidence of complicity to murder and having a weapon under disability.

Chatman's second assignment of error on direct appeal challenged both the sufficiency of the evidence and its manifest weight.  The court of appeals decided this assignment of as follows:

> **[*P21]** In his second assignment of error, appellant challenges both the sufficiency and the weight of the evidence with respect to his convictions for complicity to murder and having a weapon while under disability.
>
> **[*P22]** The Supreme Court of Ohio described the role of an

appellate court presented with a sufficiency-of-the-evidence argument in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed[.])

[*P23] Whether the evidence is legally sufficient is a question of law, not fact. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L. Ed. 2d 560. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002 Ohio 2126, P79, 767 N.E.2d 216; *State v. Thomas* (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356. Thus, a jury verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484, 2001 Ohio 4, 739 N.E.2d 749; *Jenks*, supra.

[*P24] A manifest-weight argument is evaluated under a different standard. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." (Citation omitted.) *State v. Brindley*, 10th Dist. No. 01AP-926, 2002 Ohio 2425, P16. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must disagree with the fact finder's resolution of the conflicting testimony. *Thompkins*, at 387.

The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717.

**[\*P25]** A defendant is not entitled to a reversal on manifest-weight grounds merely because inconsistent evidence was presented at trial. *State v. Raver*, 10th Dist. No. 02AP-604, 2003 Ohio 958, P21. The determination of weight and credibility of the evidence is for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. *State v. Williams*, 10th Dist. No. 02AP-35, 2002 Ohio 4503, P58; *State v. Clarke* (Sept. 25, 2001), 10th Dist. No. 01AP-194, 2001 Ohio App. LEXIS 4302. The trier of fact is free to believe or disbelieve all or any of the testimony. *State v. Jackson* (Mar. 19, 2002), 10th Dist. No. 01AP-973, 2002 Ohio 1257; *State v. Sheppard* (Oct. 12, 2001), 1st Dist. No. C-000553, 2001 Ohio App. LEXIS 4590. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. *State v. Covington*, 10th Dist. No. 02AP-245, 2002 Ohio 7037, P22; *State v. Hairston*, 10th Dist. No. 01AP-1393, 2002 Ohio 4491, P17.

**[\*P26]** Appellant asserts there was no direct evidence that he was guilty of complicity to murder by aiding and abetting. In order to support a conviction for complicity by aiding and abetting in the commission of a crime, it must be shown that the defendant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson* (2001), 93 Ohio St.3d 240, 2001 Ohio 1336, 754 N.E.2d 796, syllabus. The defendant's "intent may be inferred from the circumstances surrounding the crime." Id. "The mere act of driving away from the scene of a shooting perpetrated by a passenger of a vehicle has been held to be sufficient to uphold a conviction based on complicity where the circumstances show the driver knew shots

9

were being fired by the passenger." *State v. Garner*, 10th Dist. No. 07AP-474, 2008 Ohio 944, P21, citing *State v. Jones*, 10th Dist. No. 02AP-1390, 2003 Ohio 5994.

**[*P27]** Here, Wilson and Masters, two independent eyewitnesses from Guernsey County, Ohio, both testified that while stopped at a red light they saw Walton sitting in a car near the intersection of Kelton Avenue and Mooberry Street. Both Wilson and Masters testified a Bronco pulled up next to Walton's car, and then they heard a loud boom. According to Wilson, after the shot was fired, the driver of the Bronco "started pulling away really slow" and the driver "was just staring at us with his arm out of the window." (Tr. 63-64.) As Masters drove up to Walton's car, Wilson testified the Bronco "slammed on his brakes." (Tr. 66.) During the trial, Wilson identified appellant as the driver of the Bronco.

**[*P28]** Masters testified she was at the red light when she saw a black man sitting in his car. A Bronco pulled up at "a very slow rate" to the light. (Tr. 108.) Masters then heard a "big boom." (Tr. 93.) After that, the Bronco "drove away real slow." (Tr. 96.) According to Masters, after the shot was fired, "he was going real slow in front of my car with his arm out the window staring at me in my face." (Tr. 93.) Indicating she would never forget the driver's face, Masters identified appellant at trial.

**[*P29]** Masters pulled up to the black car as she was calling 911. Masters went to exit her car, but her daughter and **[**19]** boyfriend told her not to because the Bronco's brake lights came on; therefore, Masters left. Detectives from the Columbus Police Department went to Guernsey County the next morning to interview Masters and to show her a photo array, from which Masters identified appellant as the driver of the Bronco.

**[*P30]** Moreover, appellant knew the shotgun was in the vehicle. According to Columbus Police Detective Wayne Buck, appellant told him Vinson got the shotgun out prior to stopping at the intersection, that the gun was on Vinson's lap, and that Vinson had it raised up to the window prior to them stopping at the red light. Appellant also told Detective Buck that this was not a planned act and that the gun was out because Walton was following appellant.

**[*P31]** Appellant testified there was no plan to shoot Walton and that the only reason Vinson took the gun out of the bag was because Walton began following the Bronco containing appellant and his family. Cynthia also testified that Walton followed the Bronco for several blocks and that the Bronco was stopped first at

10

the red light when Walton pulled up next to them and reached down as if reaching for a weapon.

**[\*P32]** However, based on the evidence and the testimony of the witnesses, viewed in a light most favorable to the prosecution, as is required, we cannot say there is insufficient evidence to support the murder conviction based on complicity. The evidence offered demonstrated appellant was the driver of the vehicle from which Vinson fired a shot from a shotgun, of which appellant was aware was being aimed out the window. Further, the testimony of Wilson and Masters indicates Walton was stopped near the intersection when the Bronco pulled up next to Walton and does not support appellant's testimony that they were being followed by Walton. Thus, we cannot say there was insufficient evidence for the trial court as trier of fact to conclude appellant aided and abetted Vinson, or to make the inference that appellant shared Vinson's intent in the commission of the crime. See *Garner*, supra.

**[\*P33]** Similarly, we cannot say that the conviction is against the manifest weight of the evidence. The basis for appellant's manifest-weight challenge is the witnesses' conflicting testimony and inconsistencies with respect to some of the details surrounding the events. Essentially, appellant challenges the witnesses' credibility.

**[\*P34]** All of what appellant argues, however, was presented to, and rejected by, the trier of fact. As previously stated, the weight to be given to the evidence and the credibility of the witnesses are issues primarily for the trier of fact. *DeHass*, supra. While this case does indeed turn on circumstantial evidence, as we indicated previously, the Supreme Court of Ohio has held that "[a] conviction can be sustained based on circumstantial evidence alone." *State v. Franklin* (1991), 62 Ohio St.3d 118, 124, 580 N.E.2d 1, citing *State v. Nicely* (1988), 39 Ohio St.3d 147, 154-55, 529 N.E.2d 1236. In fact, circumstantial evidence may """be more certain, satisfying and persuasive than direct evidence.""" *State v. Ballew*, 76 Ohio St.3d 244, 249, 1996 Ohio 81, 667 N.E.2d 369, quoting *State v. Lott* (1990), 51 Ohio St.3d 160, 167, 555 N.E.2d 293, quoting *Michalic v. Cleveland Tankers, Inc*. (1960), 364 U.S. 325, 330, 81 S.Ct. 6, 11, 5 L. Ed. 2d 20. Furthermore, a conviction is not against the manifest weight of the evidence simply because the trier of fact chose to believe the prosecution's witnesses and to not believe appellant. *State v. Rippey*, 10th Dist. No. 04AP-960, 2005 Ohio 2639.

**[\*P35]** After carefully reviewing the trial court's record in its

11

entirety, we conclude that there is nothing to indicate that the trier of fact clearly lost its way or that any miscarriage of justice resulted. Consequently, we cannot say that appellant's murder conviction is against the manifest weight of the evidence.

[*P36] Regarding his conviction for having a weapon while under disability, appellant argues there was no evidence presented that he "ever knowingly acquired, had, carried, or used the firearm." (Appellant's brief at 16.) Therefore, appellant contends the only possible way to convict him of this charge was if he aided and abetted someone with a disability. Because there is no evidence in the record that Vinson was under a disability at the time of the shooting, appellant contends he cannot be convicted of having a weapon while under disability.

[*P37] Appellant was found guilty of having a weapon while under disability ("WUD") in violation of R.C. 2923.13, which provides in pertinent part:

(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

\* \* \*

(3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been an offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

[*P38] Here, it was stipulated that appellant was under indictment for possession of cocaine at the time of the offense, thus appellant's argument hinges on the notion that he did not possess the gun at issue.

[*P39] In order to "have" a firearm, one must either actually or constructively possess it. *State v. Hardy* (1978), 60 Ohio App.2d 325, 327, 397 N.E.2d 773; *State v. Messer* (1995), 107 Ohio

12

App.3d 51, 56, 667 N.E.2d 1022. "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Wolery* (1976), 46 Ohio St.2d 316, 329, 348 N.E.2d 351, cert. denied, 429 U.S. 932, 97 S. Ct. 339, 50 L. Ed. 2d 301. Constructive possession may also be achieved by means of an agent. *Hardy*, at 327; *United States v. Clemis* (C.A.6, 1993), 11 F.3d 597, cert. denied, 511 U.S. 1094, 114 S. Ct. 1858, 128 L. Ed. 2d 481 (constructive possession of a firearm exists when a defendant knowingly has the power and intention at any given time to exercise dominion and control over a firearm, either directly or through others). Moreover, we recognize that constructive possession of a weapon, even absent actual physical possession, may be established by a totality of evidence establishing an accomplice relationship between the physical possessor and his or her accomplice. *State v. McConnell* (Oct. 13, 1983), 8th Dist. No. 45294, 1983 Ohio App. LEXIS 13756. Thus, if appellee proved beyond a reasonable doubt that appellant constructively possessed the firearm, then appellant could indeed be found guilty of having a weapon while under disability, and whether or not Vinson had a disability would be irrelevant.

**[\*P40]** From the testimony, including that of appellant, although Vinson used the weapon, appellant had knowledge of its presence. Appellant testified he knew Vinson obtained the gun a few days prior to the shooting, knew the gun was in the vehicle on the day of the shooting, and saw Vinson hold the gun up to the window upon stopping at the intersection. Further, regarding the gun, appellant testified, "I always drive the truck, so it stayed on the passenger's side like in the behind on the side of the passenger's side." (Tr. 256.)

**[\*P41]** Based on the record, we find sufficient evidence that appellant possessed the firearm. *State v. Ridley*, 10th Dist. No. 03AP-1204, 2005 Ohio 333 (defendant and accomplice who used the gun to commit robbery were in close proximity of gun such that it was easily accessible to defendant and one could find possession for purposes of WUD charge); *State v. Dorsey*, 10th Dist. No. 04AP-737, 2005 Ohio 2334 (The defendant had the ability to exercise dominion and control over the firearm found in between the console and the passenger's seat, thus he constructively possessed it.). Furthermore, we cannot say the trial court clearly lost its way or that the conviction constitutes a manifest miscarriage of justice.

> **[\*P42]** For the foregoing reasons, appellant's second assignment of error is overruled.

*State v. Chatman,* 2009 Ohio 2504, ¶¶ 22-41.

The court of appeals was careful to distinguish between the questions of sufficiency of the evidence and manifest weight of the evidence.  Only the sufficiency of the evidence claim can be considered in habeas corpus because Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. §2254(a); *Wilson v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13; 178 L. Ed. 2d 276 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).   "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  The Due Process Clause of the Fourteenth Amendment prohibits a conviction on insufficient evidence.  *Jackson v. Virginia, supra.*  However there is no federal constitutional right to a new trial when the conviction is against the manifest weight of the evidence.

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the

> evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam)*.

Having reviewed the court of appeals' decision on the sufficiency of the evidence questions, this Court cannot say that they are objectively unreasonable applications of *Jackson v. Virginia*. Petitioner's Second Ground for Relief should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a

certificate of appealability on this Ground for Relief.

### Ground Three: Denial of Right to Confrontation and Compulsory Process

In his Third Ground for Relief, Petitioner claims the trial court denied him the right to present a complete defense and his rights under the Confrontation Clause. The cognate claim on direct appeal was the third assignment of error which the court of appeals decided as follows:

> [*P43] In his third assignment of error, appellant contends the trial court denied him the ability to present a complete defense. Under this assigned error, appellant asserts he desired to call Vinson as a witness but was precluded because the prosecution indicated it would withdraw Vinson's plea bargain if Vinson testified for appellant. Also under this assigned error, appellant asserts the trial court erred in not requiring Vinson to take the stand to determine whether or not he would assert his Fifth Amendment rights. In support of this argument, appellant relies on *Columbus v. Cooper* (1990), 49 Ohio St.3d 42, 550 N.E.2d 937.
>
> [*P44] The trial court, however, committed no error in either regard. As the record reflects, the trial court stated:
>
>> Certainly, if you would like to call him as a witness and you believe that he may testify, you can call him, and we will see whether or not he asserts his Fifth Amendment rights. If he does so, we can do that. (Tr.19.)
>
> [*P45] Moreover, even if appellant had called Vinson to testify, as recently stated by this court in *State v. Whiteside*, 10th Dist. No. 08AP-602, 2009 Ohio 1893, despite the defendant's reliance on *Cooper*, there is no "right" of a defendant to call a witness solely for the purpose of invoking his or her Fifth Amendment rights. Id. at P58, citing *State v. Reed*, 10th Dist. No. 08AP-20, 2008 Ohio 6082, P54. The Supreme Court of Ohio in *State v. Kirk* (1995), 72 Ohio St.3d 564, 1995 Ohio 204, 651 N.E.2d 981, expressly limited and distinguished *Cooper* and held that a trial court may exclude a person from appearing as a witness on behalf of a criminal defendant at trial if the court determines that the witness will not offer any testimony but merely intends to assert the Fifth

> Amendment privilege against self-incrimination. Id. at paragraph one of the syllabus.
>
> **[*P46]** Despite *Kirk's* holding, appellant relies on *State v. Reiner (2001), 93 Ohio St.3d 601, 2001 Ohio 1800, 757 N.E.2d 1143* ("*Reiner II*"). This court has noted, however, in previous cases that while persuasive, *Reiner II* was a plurality decision and, therefore, is not controlling. See *Whiteside; Reed*. Also, as noted in *Whiteside, Reiner II* did not discuss *Kirk*, and our research has revealed no case that has cited *Reiner II* for the proposition set forth by appellant. Instead, *Kirk* continues to be cited for its holding that a trial court may exclude a person from appearing as a witness on behalf of a criminal defendant at trial if the court determines that the witness will not offer any testimony but merely intends to assert the Fifth Amendment privilege against self-incrimination. *Whiteside*, at P60.
>
> **[*P47]** Therefore, while it does not appear the trial court ever precluded appellant from calling Vinson as a witness, even if appellant had made such a request, the record reflects a strong indication that Vinson would have asserted only his Fifth Amendment rights, and, therefore, there would be no error in the trial court's exclusion of such testimony.
>
> **[*P48]** Accordingly, appellant's third assignment of error is overruled.

*State v. Chatman*, 2009 Ohio 2504, ¶¶ 43-48.

It is difficult to tell what Petitioner might mean by claiming a Confrontation Clause violation here. The Confrontation Clause applies only to testimony against a defendant, and Petitioner points to no testimony against him which did not happen in open court, subject to cross-examination.

As to the claim that he was precluded from presenting a complete defense by not being able to put his co-defendant on the stand, the court of appeals notes that he was not prevented from doing so if the co-defendant had helpful testimony to offer. On the other hand, there is no federal constitutional right to put a co-defendant on the stand to force him or her to plead the privilege against self-incrimination because that is not testimony and not relevant to whether or

17

not a defendant is himself guilty: while the jury improperly may infer a person's guilt from his pleading the Fifth Amendment, it is in fact not an admission.

## Conclusion

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and this Court should certify to the Sixth Circuit that and appeal would not be taken in objective good faith and therefore should not be permitted to proceed *in forma pauperis*.

March 25, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).